UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BYRON WILLIAMS                                      CIVIL ACTION

VERSUS                                             NO. 14-2481

CAROLYN W. COLVIN, ACTING                          SECTION "R" (2)
COMMISSIONER OF SOCIAL SECURITY

## REPORT AND RECOMMENDATION

Plaintiff, Byron Williams, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Act.  42 U.S.C. §§ 423, 1382c.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

## I.    PROCEDURAL HISTORY

Williams filed his applications for DIB and SSI on December 14, 2011, alleging disability beginning October 25, 2011, the same date when his previous applications for benefits were denied.  (Tr. 18, 198).  In his applications currently before this court, plaintiff alleged disability due to an aneurysm, high blood pressure, arthritis, seizures, chronic headaches, back pain, nerve damage to his right shoulder and colon problems. (Tr. 49-50).  After his claims were denied at the agency level, he requested a hearing before an Administrative Law Judge (ALJ).

A hearing commenced on April 10, 2013, but before any testimony was taken, the ALJ offered plaintiff an opportunity to confer with his attorney to decide whether to proceed as scheduled or to ask that another ALJ decide the case.  Williams requested reassignment.  His request was granted, the hearing was terminated and the matter was assigned to another ALJ.  (Tr. 33-45).

The second ALJ held a hearing on May 30, 2013 (Tr. 46-75), during which Williams amended his alleged onset date to November 28, 2011.  (Tr. 18, 49).  The ALJ issued a decision denying the applications on June 12, 2013.  (Tr. 18-28).  After the Appeals Council denied review on August 25, 2014, the ALJ's decision became the Commissioner's final decision for purposes of this court's review.  (Tr. 1-5).

Plaintiff filed a timely memorandum in support of his appeal.  Record Doc. No. 15.  Defendant filed a timely reply memorandum.  Record Doc. No. 16.

II.  STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    The ALJ failed to assign any restrictions consistent with the recognized severe impairment of sleep apnea.[1]

B.    The ALJ failed to recognize plaintiff's other severe impairments.

C.    The ALJ erred in assessing plaintiff's shoulder impairment.

---

[1]Sleep apnea refers to "brief periods of recurrent cessation of breathing during sleep that is caused especially by obstruction of the airway or a disturbance in the brain's respiratory center and is associated especially with excessive daytime sleepiness."  MedlinePlus Medical Dictionary (Merriam-Webster, Inc. 2015), http://www.merriam-webster.com/medlineplus/sleep%20apnea.

D.     The ALJ erred in assigning significant weight to the state agency medical expert's opinion regarding Williams's residual functional capacity.

E.     The vocational expert's testimony is not substantial evidence because it did not fully incorporate plaintiff's disabilities.

F.     Williams did not receive fair and unbiased consideration of his claim.

III.    <u>ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL</u>

1.     Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date of November 28, 2011.

2.     He has severe impairments consisting of possible seizures, degenerative disc disease of the right shoulder, degenerative disc disease of the neck and low back, sleep apnea, hypertension and obesity.

3.     Williams has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.

4.     He has the residual functional capacity to perform light work except that he cannot climb ladders, ropes or scaffolds; cannot reach overhead with his right, dominant arm; can occasionally reach in all directions with his right arm; can occasionally stoop, kneel, crouch and crawl; and cannot work at heights or around dangerous machinery.

5.     Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

6.     He cannot perform his past relevant work as a truck driver.

7.     Considering his age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, including usher, locker room attendant and counter clerk.

8.   Williams has not been under a disability from October 25, 2011, through the date of the ALJ's decision.

(Tr. 20-28).

IV.   ANALYSIS

A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The

4

Commissioner, rather than the courts, must resolve conflicts in the evidence. <u>Luckey v. Astrue</u>, 458 F. App'x 322, 324 (5th Cir. 2011) (citing <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990)); <u>Newton</u>, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. <u>Joubert v. Astrue</u>, 287 F. App'x 380, 382 (5th Cir. 2008) (citing <u>Perez</u>, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Ray v. Barnhart</u>, 163 F. App'x 308, 311 (5th Cir. 2006) (citing <u>Perales</u>, 402 U.S. at 390); <u>Perez</u>, 415 F.3d at 461.

To be considered disabled and eligible for SSI or DIB,[2] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§

_____

[2]The relevant law and regulations governing claims for DIB and SSI are identical. <u>Carmon v. Barnhart</u>, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994)); <u>Baltierra v. Chater</u>, 70 F.3d 1268, 1995 WL 696740, at *1 (5th Cir. Oct. 19, 1995) (citing <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1467 (5th Cir. 1989)); <u>Bryan v. Halter</u>, 252 F.3d 1357, 2001 WL 422878, at *1 (5th Cir. Apr. 5, 2001) (citing <u>Haywood</u>, 888 F.2d at 1467).

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[3]  Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F.  App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Id.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the

---

[3]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'"  Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

## B.    Factual Background

Plaintiff testified that he is 44 years old and lives alone.  (Tr. 50-51).  He said he finished eleventh grade and had vocational training as a truck driver.  He stated that his commercial driver's license had expired and he would be unable to pass a physical examination to obtain a new one.  He said he last worked in July 2010 and had worked only as an over-the-road, 18-wheeler truck driver in the past 15 years.  (Tr. 51-52).

Williams testified that he has problems with his back, neck and right arm and has gout,[4] sleep apnea and seizures.  He stated that his right side does not work and that he

---

[4]Gout is "a metabolic disease marked by a painful inflammation of the joints, deposits of urates in and around the joints, and usually an excessive amount of uric acid in the blood."  MedlinePlus Medical Dictionary (Merriam-Webster, Inc. 2015), http://www.merriam-webster.com/medlineplus/gout. Urates are "a salt of uric acid."  Id., http://www.merriam-webster.com/medlineplus/urates.

had an aneurysm in about 1997, which led to the seizures.  (Tr. 52-53).  He said that he continued to drive after that, but that his seizures and gout worsened and he lost the use of his right arm.  He stated that he was diagnosed with a frozen shoulder, but the diagnosis is not certain because he cannot have an MRI due to the metal clip in his brain since the aneurysm.  Plaintiff testified that he takes medicine for his shoulder and that he has never been sent for physical therapy, although he has had the shoulder condition for five to six years.  He said that his shoulder problems started after the aneurysm and progressively worsened.  (Tr. 53-54).

Williams stated that he has nerve or spinal cord damage in his back and neck.  He said his doctors think that the problems with his neck vertebrae also have something to do with his shoulder, but that cannot be verified because he cannot undergo an MRI.

Plaintiff testified that he was diagnosed with gout by his foot doctor at LSU Hospital in Bogalusa, Louisiana, and that he takes medication for it. (Tr. 54).  He stated that he was currently having a flare-up and that the medication does not seem to prevent his frequent flare-ups.  He said that his blood work showed high uric acid content, which led to the diagnosis of gout.

Williams stated that he had a sleep study done at LSU Bogalusa in the past year and is still trying to obtain a sleep apnea machine.  He testified that he has been sleeping in a recliner chair for almost a year because he cannot breathe if he lies flat and then he

has to wake up.  (Tr. 56-57).  He stated that he has not tried to lose weight by walking because he cannot walk very far.

Plaintiff said he is right-handed.  He testified that he has seizures once or twice a week.  He stated that he does not keep a seizure calendar and that no doctor ever told him to keep one.  (Tr. 57).

Williams testified that, on a normal day, he gets up, has breakfast and takes his medicine.  He said he has to take a nap about one hour after taking the medicine.  He stated that, after he wakes up, he sits with his feet elevated to avoid swelling and walks to check the mailbox at some point.  He said he takes his medicine again in the late afternoon and is then "pretty much gone for the night."  (Tr. 58).

Plaintiff stated that his cousin cooks and cleans for him most evenings after she gets off work.  Otherwise, he said he microwaves something to eat.  He testified that his cousin shops and washes his clothes for him, and his brother takes care of his yard.  He stated that he watches television during the day and goes to church at least twice a month.  He said he used to hunt and fish, but does not anymore.  He stated that he does not visit family or friends.  (Tr. 58-59).  Williams testified that he never obtained a regular driver's license after his commercial driver's license expired.  (Tr. 59-60).  He said that a friend drove him to the hearing.

Plaintiff stated that he takes Lotensin[5] and two other medications for high blood pressure, another pill for gout, and Dilantin[6] and Depakote[7] for seizures. He testified that it was difficult for him to walk from the parking lot to the hearing and that he can walk for only one-half block before he becomes short of breath and has to rest. He said he can stand for 15 minutes. (Tr. 60). He stated that he cannot lift anything with his right arm but can lift ten pounds with his left arm. He said that, if he grabs something with his right hand, he can feel it beginning to go and cannot stop it, so he does not use that hand. He said he cannot hold very much with his right hand and cannot raise his right arm.

Williams stated that he can sit for only 30 minutes because of his back problems. He said he spends most of his time in the recliner, sleeping and watching television. (Tr. 61). He testified that his condition has worsened in the last two years, especially in his right arm and leg, neither of which he can use now. He said he has seizures about twice a week. He stated that he can feel a seizure coming, cannot function at all during

_____

[5]Lotensin (generic name: benazepril) is "an angiotensin-converting enzyme (ACE) inhibitor, used alone or in combination with other medicines to treat high blood pressure." PDRhealth (PDR Network, LLC 2015), http://www.pdrhealth.com/drugs/lotensin (visited Aug. 28, 2015).

[6]Dilantin (generic name: phenytoin) is used "to control grand mal seizures (a type of seizure that causes a sudden loss of consciousness immediately followed by convulsions) and temporal lobe seizures (a type of seizure that affects smell, taste, sight, hearing, memory, and movement)." Id., http://www.pdrhealth.com/drugs/dilantin (visited Aug. 28, 2015).

[7]Depakote (generic name: divalproex) "is used to treat to treat manic episodes associated with bipolar disorder, as well as certain types of seizures and migraines." Id., http://www.pdrhealth.com/drugs/depakote (visited Aug. 28, 2015).

it and must sit down to keep from falling down.  (Tr. 62-63).  He guessed that his seizures last about 30 minutes, but said he had never timed them.

Plaintiff testified that he has daily, painful headaches that last half a day.  He said he takes Advil daily, which relieves the headaches, and also takes BC Powders[8] daily for pain.  (Tr. 63-64).  He stated that he deals with neck, mid-back and low back pain every day and when he wakes up never knows if he will be able to stand up.  (Tr. 64).  He said he does not often have a pain-free day and that the pain is constant, especially in his right shoulder.  He testified that he gets a break from back pain every now and then when he takes Advil and BC Powder and then goes to sleep.

Williams estimated that the last time he was up and active for eight hours in a day was two to three years ago.  He stated that he could not stand for an entire eight-hour day because his back and his feet would be in excruciating pain and his feet would swell up. He said he could not sit for an entire eight-hour day because of back pain.  (Tr. 65-66).

C.   Vocational Expert Testimony

A vocational expert, Lacy Sapp, testified that plaintiff's past relevant jobs as a truck driver and tractor-trailer truck driver are both medium and semi-skilled.  The ALJ posed a hypothetical of a person with plaintiff's age, education and work experience who can do light work, but cannot climb ladders, ropes or scaffolds; can stoop, kneel, crouch

---

[8]According to the BC Powder website, the active ingredients of this over-the-counter medicine are aspirin and caffeine.  http://www.bcpowder.com/pain-relievers/headache-body-pain-relief/ (visited Aug. 28, 2015).

and crawl occasionally; cannot reach overhead with the right dominant arm; and cannot work at heights or around dangerous machinery. Sapp testified that such an individual could not perform plaintiff's past relevant work. She stated that the person could perform light, unskilled jobs such as usher, locker room attendant and courier, which are available in significant numbers in Louisiana and the national economy. (Tr. 70).

When the ALJ asked if the courier job involved driving, the vocational expert said it would. The ALJ eliminated that job because of plaintiff's seizures and inability to work around dangerous machinery. (Tr. 70-71). Sapp identified an additional light, unskilled job of counter clerk that the hypothetical person could perform.

The ALJ posed a second hypothetical with the added limitation that the claimant would have limited or occasional reaching in all directions with the right arm. The vocational expert testified that the individual could perform the same three jobs. The ALJ's third hypothetical included an additional restriction that the person was limited to occasional grasping, i.e., gross manipulation, with the right dominant hand. Sapp stated that this limitation would eliminate only the job of locker room attendant. (Tr. 71). She said that a person with the limitations of the third hypothetical could also work as a sedentary, unskilled surveillance system monitor. (Tr. 71-72).

Upon questioning by plaintiff's attorney, the vocational expert testified that the jobs she had named (except surveillance system monitor, which the attorney asked her not to consider) required occasional use of the upper extremities bilaterally throughout

the work day.  She agreed with the attorney that a locker room attendant picks up and hands out towels, but pointed out that the locker room attendant job would be eliminated by the ALJ's third hypothetical.  Sapp testified that a counter clerk works at a photo counter, for example, entering data into a computer and handing things to a customer, which requires occasional, but not frequent, use of fine finger motor skills.

Sapp stated that none of the previously identified jobs would be eliminated if the hypothetical person could not use his dominant right arm throughout the duration of an eight-hour day.  (Tr. 73).  Plaintiff's attorney posed a hypothetical of a person who, because of the effects of a seizure disorder; pain from degenerative disc disease, persistent headaches and periodic flare-ups of gout; and effects on alertness and sensorium[9] caused by either or both sleep apnea and depression, would be unable to come to work or, having come to work, would be unable to complete an eight-hour work day. Sapp testified that such an individual would not be able to sustain any employment. (Tr. 74).

    D.    <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 21-22, 24-26).  I find the ALJ's summary of the medical evidence

---

[9]Sensorium is "1. An organ of sensation.  2. The hypothetic 'seat of sensation.'. . .  3. In human biology and psychology, consciousness; sometimes used as a generic term for the intellectual and cognitive functions."  <u>Stedmans Medical Dictionary</u> (27th ed.), on Westlaw at STEDMANS 809770.

substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

    E.    <u>Plaintiff's Appeal</u>

        1.    <u>The evidence does not substantially support additional restrictions in plaintiff's residual functional capacity based on his sleep apnea.</u>

At the second step of the sequential evaluation, the ALJ found that Williams has severe impairments, including sleep apnea. Plaintiff contends that a severe impairment, by definition, significantly limits his ability to perform basic work activities and that the ALJ erred because she did not include in his residual functional capacity any vocational restrictions associated with his severe impairment of sleep apnea.

In the Fifth Circuit, "[a]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" <u>Herrera v. Comm'r of Soc. Sec.</u>, 406 F. App'x 899, 902 n.1 (5th Cir. 2010) (quoting <u>Loza v. Apfel</u>, 219 F.3d 378, 391 (5th Cir. 2000)); <u>accord</u> <u>Stone v. Heckler</u>, 752 F.2d 1099, 1101 (5th Cir. 1985).

Williams argues that his sleep apnea "would encompass problems with attention and concentration, and with the effects of fatigue on performance" during a work day and that the ALJ should have included these limitations in his residual functional capacity assessment. Plaintiff's memorandum, Record Doc. No. 15 at p. 7. He cites his sleep

study on December 15, 2011, which contains a diagnosis of moderate to severe obstructive sleep apnea syndrome.  (Tr. 582).  A continuous positive airway pressure (CPAP) trial and titration on the same date showed that his sleep patterns improved, he had minimal apneic events and he rested well when using a CPAP machine.  (Tr. 583).

Plaintiff's argument is not supported by the law or the evidence.  First, the ALJ's opinion indicates that she accounted for Williams's sleep apnea.  She stated that she must consider all of plaintiff's impairments, both severe and non-severe, in determining his residual functional capacity.  (Tr. 20).  At step three of the sequential evaluation, the ALJ considered whether Williams met the criteria of Listing 3.10 for disability based on sleep-related breathing disorders, including whether he exhibited a loss of specific cognitive abilities or affective changes.  (Tr. 22).  When assessing his residual functional capacity at the fourth step, the ALJ considered all of plaintiff's symptoms and the extent to which they were consistent with the medical evidence.  (Tr. 22).  The limitations that she found included an inability to perform work at heights or around dangerous machinery, which may be attributable in part to fatigue and possible inattention due to sleep apnea.

Second, the mere diagnosis of an impairment does not establish a claimant's disability claims.  Bordelon v. Astrue, 281 F. App'x 418, 421 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon v. Barnhart, 184 F. App'x 430, 431 (5th Cir. 2006).  Plaintiff "'must show that [he] was so functionally

impaired [by his diagnosed impairment] that [he] was precluded from engaging in any substantial gainful activity.'" Bordelon, 281 F. App'x at 422 (quoting Hames, 707 F.2d at 165) (emphasis added); accord Taylor v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012); Randall v. Astrue, 570 F.3d 651, 658-59 (5th Cir. 2009); Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992). Williams cites no evidence that he has any functional limitations because of his sleep apnea beyond those that the ALJ found.

Third, plaintiff is incorrect when he argues that the ALJ was required to include restrictions related to his sleep apnea in his residual functional capacity assessment simply because his sleep apnea is a severe impairment. "Under the regulations it is clear that the existence of a severe impairment does not automatically establish its effects/limitations on a claimants [sic] ability to perform work-related activities, i.e., the exertional and nonexertional demands of jobs." Andre v. Astrue, No. 11-250-JJB, 2012 WL 5363321, at *6 (M.D. La. Sept. 24, 2012) report & recommendation adopted, No. 11-250-JJB, 2012 WL 5363317 (M.D. La. Oct. 30, 2012) (citing 20 C.F.R. §§ 404.1545, 404.1569a). The ALJ's finding that Williams has a combination of severe impairments "did not foreclose a finding that [he] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding." Boyd v. Apfel, 239 F.3d 698, 706 (5th Cir. 2001).

Williams cites no medical evidence, other than the sleep study itself, to support his contention that his sleep apnea "would encompass problems" with attention,

concentration and fatigue.  No physician assessed him with any limitations based on his sleep apnea.  The only evidence that addresses plaintiff's mental status is a Psychiatric Clinic Evaluation at LSU Health Sciences Medical Center in Bogalusa on April 17, 2012, by Chris Lartigue, M.D., a psychiatrist.[10]  Dr. Lartigue found that Williams had normal speech and psychomotor activity, intact memory and adequate concentration and attention span.  (Tr. 399).  Dr. Lartigue recommended weight loss to help with plaintiff's sleep apnea.  (Tr. 400).  Williams himself indicated on his Function Report dated December 29, 2011, that his medical conditions did not affect his memory, ability to complete tasks, concentration, understanding or ability to follow instructions.  (Tr. 207).

Williams has not identified any legal error by the ALJ or any substantial evidence to support his contention that the ALJ should have assessed additional limitations as a result of his sleep apnea.  Accordingly, this assignment of error lacks merit.

> 2.    The ALJ did not err by failing to recognize plaintiff's other severe impairments.

At the second step of the sequential evaluation, the ALJ determines the "medical severity" of the claimant's medically determinable impairments.   20 C.F.R. §

---

[10]The physician who nominally electronically signed this evaluation is Gregory LaNata, D.P.M., a Doctor of Podiatric Medicine.  Other clinic notes and the LSU Health Sciences Center website confirm that Dr. LaNata is a podiatrist. http://www.lsuhospitals.org/Hospitals/BMC/BMC-Physician.aspx (visited Sept. 3, 2015).  However, two other psychiatric notes in the record (Tr. 396-97), which specifically refer to the initial evaluation, are signed by Dr. Lartigue, who is a psychiatrist.
https://psychiatrists.psychologytoday.com/rms/name/Chris+Lartigue,+M.D._Mandeville_Louisiana_209607 (visited Sept. 3, 2015).  Therefore, I have assumed that Dr. Lartigue, rather than Dr. LaNata, performed the initial psychiatric evaluation.

404.1520(a)(4)(ii).  Williams argues that the ALJ erred by failing to recognize that his "gout, persistent headaches, depression and late effects of aneurysm and basal ganglia infarct"[11] are severe impairments.

Other than that mention of depression in his memorandum, Williams presents no argument or evidence to contradict the ALJ's finding that his depression is not a severe impairment.  Therefore, he is deemed to have abandoned that issue.  Huskey v. Colvin, 560 F. App'x 367, 370 (5th Cir. 2014) (citing Thorton v. Schweiker, 663 F.2d 1312, 1315 (5th Cir. 1981)); Munson v. Comm'r of Soc. Sec. Admin., No. 12-369-RLB, 2014 WL 1165837, at *3 (M.D. La. Mar. 21, 2014) (citing Riecke v. Barnhart, 184 F. App'x 454, 456 n.3 (5th Cir. 2006); Mobley v. Shalala, 50 F.3d 1032, 1995 WL 136111, at *2 n.4 (5th Cir. 1995)); Watson v. Astrue, No. 6:12-CV-315, 2013 WL 6662828, at *2 (E.D. Tex. Dec. 17, 2013) (citing United States v. Green, 508 F.3d 195, 203 (5th Cir. 2007); United States v. Luciano-Rodriguez, 442 F.3d 320, 322 n.5 (5th Cir. 2006)).

As to gout, the ALJ acknowledged at the hearing that the medical records and plaintiff's testimony reflect a diagnosis of gout.  However, her decision at step two stated that she was "unable to find any signs, symptoms or laboratory findings to support a medically determinable impairment of gout."  Because gout was not even a medically

---

[11]The basal ganglia are "four deeply placed masses of gray matter within each cerebral hemisphere."  MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/basal%20ganglion.  An infarct is "an area of necrosis in a tissue or organ resulting from obstruction of the local circulation by a thrombus or embolus."  Id., http://www.merriam-webster.com/medlineplus/infarct.

determinable impairment, it could not be a severe impairment. (Tr. 21). Williams argues that the ALJ overlooked an abnormal uric acid test result dated March 20, 2012 (Tr. 590), which is diagnostic of gout, and that he was treated for it. (Tr. 584-90).

The ALJ did not discuss plaintiff's headaches at step two of her decision. Williams contends that his testimony and treatment records document his severe daily headaches, to which his long-ago stroke and aneurysm could have contributed.

The ALJ cited the relevant standard and explained why she found that plaintiff's gout was not a severe impairment. When the ALJ has proceeded beyond step two to find at a subsequent step that a claimant is not disabled, plaintiff's argument that the ALJ failed at step two to find that a particular impairment is severe

> is inapposite because the ALJ did not [deny] plaintiff's benefits based on a finding that [his] impairments are not severe. See Chapparo v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987) (argument regarding improper application of Stone standard irrelevant to disposition of case if outcome of case [did] not turn on issue of severity); see also Shipley v. Director of Health and Human Services, 812 F.2d 934, 935 (5th Cir. 1987). The ALJ's report contains a statement of the Stone standard and a determination that as it applied to this case, [one of claimant's several alleged impairments] is a severe impairment. . . . The ALJ then proceeded to the next step of the sequential evaluation and assessed whether an impairment or a combination of plaintiff's impairments met or exceeded the severity of the impairments listed in the appendix. See 20 C.F.R. § 404.1594(f)(2). In the absence of a "non-severe" finding as to any one of plaintiff's impairments and a decision to [deny] plaintiff's benefits based on a "non-severe" finding, plaintiff cannot complain that any prejudice resulted from the ALJ's performance at this stage in the evaluation. See Brock v. Chater, 84 F.3d 726, 729 (5th Cir. 1996) (decision will not be reversed where claimant makes no showing that she was prejudiced by deficiencies she alleges).

Lawrence v. Barnhart, No. 01-1366, 2002 WL 356316, at *2 (E.D. La. Mar. 4, 2002); see also Taylor v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012) ("any error by the ALJ in not following the procedures set out in Stone [at step two] is harmless" when the ALJ found at step five that plaintiff was not disabled by his severe impairments); Bradshaw v. Astrue, No. 1:07-CV-0150-C, 2008 WL 4387087, at *6 (N.D. Tex. Sept. 26, 2008) (citing Robinson v. Barnhart, 183 F. App'x 451, 455 (5th Cir. 2006); Reyes v. Sullivan, 915 F.2d 151, 154 n.1 (5th Cir. 1990); Chapparo, 815 F.2d at 1011) ("In more recent cases, the Fifth Circuit has found no merit to claimants' arguments of ALJ error arising out of the failure to correctly apply or state the Stone standard where the sequential evaluation process proceeds past step 2."); accord Arnett v. Astrue, 676 F.3d 586, 591 (7th Cir. 2012) (citing Castile v. Astrue, 617 F.3d 923, 927-28 (7th Cir. 2010)); Delia v. Comm'r of Soc. Sec., 433 F. App'x 885, 887 (11th Cir. 2011) (citing Reeves v. Heckler, 734 F.2d 519, 524 (11th Cir. 1984)); Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).

"Because the ALJ did not summarily dispose of Plaintiff's claims at Step Two, but instead determined that Plaintiff had at least one severe impairment and proceeded to Step Four [or Five] to determine that Plaintiff was not disabled, the proper focus here is whether substantial evidence supports the ALJ's residual functional capacity (RFC) assessment and ultimate determination that Plaintiff was not disabled." Lavery v. Astrue,

No. V-11-3, 2012 WL 3276711, at *5 (S.D. Tex. Aug. 8, 2012) (citing Chaparro, 815 F.2d at 1011) (footnote omitted).

Having found that Williams had several severe impairments, the ALJ proceeded through all subsequent steps of the evaluation, considered all of the evidence concerning his medically determinable impairments and found that he is capable of light work with the restrictions stated in the decision. The ALJ's failure to find at step two that plaintiff's other impairments were severe is irrelevant and non-prejudicial to him.

Even if the court were to review the ALJ's step two determination, substantial evidence supports her finding that plaintiff's headaches and gout are not severe impairments. Although the ALJ may have overlooked the uric acid test result, that test alone merely provides a foundation for the diagnosis of gout. While plaintiff's medical records show treatment for gout and complaints of headaches, the diagnoses do not establish the severity of those conditions from a functional standpoint.

As previously stated, the mere diagnosis of any impairment does not establish disability, Bordelon, 281 F. App'x at 421-22; McLendon, 184 F. App'x at 431; Hames, 707 F.2d at 165, nor does it establish severity. "The severity of an impairment is measured in terms of its effect on the claimant's ability to work. A mere diagnosis is insufficient to establish that an impairment is severe because it does not reveal the extent to which the impairment limits the claimant's ability to work." Stone v. Astrue, No. 8:12-cv-35-T-17TBM, 2013 WL 1212889, at *6 (M.D. Fla. Feb. 26, 2013), report &

recommendation adopted, 2013 WL 1212881 (M.D. Fla. Mar. 25, 2013), aff'd, 586 F. App'x 505 (11th Cir. 2014) (citing Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)); accord Casares v. Astrue, No. 4:11CV162, 2013 WL 960229, at *6 (S.D. Miss. Feb. 25, 2013), report & recommendation adopted, 2013 WL 960186 (S.D. Miss. Mar. 12, 2013) (citing Hames, 707 F.2d at 165); Morris v. Astrue, No. 4:11-CV-631-Y, 2012 WL 4468185, at *8 (N.D. Tex. Sept. 4, 2012), report & recommendation adopted, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012) (citing Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999)); Ranes v. Astrue, No. 3:08-CV-2030-D, 2009 WL 2486037, at *3 (N.D. Tex. Aug. 14, 2009) (citing Randall v. Astrue, 570 F.3d 651, 657-59 (5th Cir. 2009)); Schultz v. Astrue, No. 09-3238, 2010 WL 2733605, at *9 (E.D. La. June 8, 2010), report & recommendation adopted, 2010 WL 2733565 (E.D. La. July 8, 2010).

Williams testified that he takes non-prescription Advil and BC powders for his headaches, which provide relief.  (Tr. 63-64).  He told the consultative examiner, Cristonio Dijamco, M.D., on February 4, 2012, that he had daily headaches relieved by over-the-counter medication like Aleve. (Tr. 353). Plaintiff saw a neurologist, Katherine Grace Esse, M.D., on February 9, 2012.  He reported chronic headaches and occasional loss of consciousness during the past two years, but said he had never been on any medication for it.  She started him on Depakote.  (Tr. 359-60).  He told Dr. Lartigue on April 17, 2012, that his headaches had resolved since he began taking Depakote.  (Tr. 399).  Although the ALJ did not find plaintiff's headaches to be a severe impairment, she

22

considered his testimony and the medical evidence about his headaches in assessing his residual functional capacity.  (Tr. 24-25).

High uric acid level was found on March 20, 2012, but plaintiff was not diagnosed with "arthritis, gouty" until September 4, 2012, by his podiatrist, Dr. LaNata, whom he had initially consulted in March 2012 for an ingrown toenail.  (Tr. 584-85, 589-90).  The handwritten clinic notes are very difficult to read, but it appears that Williams was treated with some kind of medication for gout on September 4 and December 3, 2012.  (Tr. 554).  No other medical records reflect any treatment for gout.

Williams has not shown that the ALJ's failure to find that his gout and/or headaches were severe impairments two prejudiced him in any way.  Accordingly, this assignment of error is meritless.

3.     <u>The ALJ did not err in assessing plaintiff's shoulder impairment.</u>

Williams argues that the ALJ improperly asserted her "medical opinion" at the hearing that he should have had physical therapy for his "frozen" right shoulder.  The ALJ noted in her decision that Williams has had shoulder problems for five to six years, but never had physical therapy and the problem has been treated with medication only.  In opposition to the ALJ's finding that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity determination, Williams cites to x-ray evidence of severe degenerative disease in his right shoulder, consultative examiner

Dr. Dijamco's "conclusion of 'nerve damage' to the shoulder" (Plaintiff's memorandum, Record Doc. No. 15 at p. 9), and neurologist Dr. Esse's statement that she could not perform a good motor examination because of pain and tenderness in plaintiff's shoulder. Based on this evidence, Williams argues that the ALJ should have assessed stricter limitations in his capacity to use his right arm.

However, Dr. Dijamco did <u>not</u> opine that Williams had nerve damage in his shoulder. He merely included that reported condition in a list of plaintiff's "allegations." (Tr. 352, 355). On the other hand, plaintiff is correct that Dr. Dijamco noted that Williams had extremely limited range of motion in his right shoulder because of pain and that Dr. Dijamco reviewed x-rays, which showed "severe degenerative changes" in the right glenohumeral (shoulder) joint. However, Dr. Dijamco concluded that Williams was "neurologically intact." (Tr. 355). Dr. Esse did state that she had "difficulty eliciting a good motor exam in [plaintiff's] right arm because he has a frozen shoulder, it is very tender to the touch." (Tr. 361).

The ALJ weighed this evidence along with the entire record. She incorporated in plaintiff's residual functional capacity several limitations on use of his right arm and shoulder. She determined that he has a residual functional capacity for light work, which restricts lifting to no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). The ALJ incorporated plaintiff's limited use of his right arm and shoulder in finding that he cannot climb

ladders, ropes or scaffolds; cannot reach overhead with his right arm; and can only occasionally reach in all directions with that arm.

In her review of the record, the ALJ appropriately considered that Williams never had physical therapy or surgery for his longstanding shoulder problems, but had only routine, conservative care. (Tr. 26). On August 2, 2011, his primary care provider, nurse practitioner Vera Williams, ordered a physical therapy consultation to evaluate his right shoulder and back pain, to be performed after he had a surgery consultation for a kidney stone. (Tr. 293). Although the kidney stone was treated, no physical therapy consultation was ever conducted. On April 13, 2012, Dr. Lartigue noted that he intended to counsel plaintiff about possible exploratory shoulder surgery, since Williams could not have an MRI because of the aneurysm clip in his brain. (Tr. 400). However, Williams saw Dr. Lartigue only once again on May 7, 2012, and there is no evidence that he considered any surgical option.

A claimant's lack of need for strong medication or a failure to seek treatment are relevant factors to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount the claimant's complaints of disabling pain or other limitations. Clayborne v. Astrue, 260 F. App'x 735, 737 (5th Cir. 2008); Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)); Austin v. Apfel, 205

F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991)).

Determining the credibility of plaintiff's subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence. Luckey, 458 F. App'x at 326 (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); Perez, 415 F.3d at 462. The ALJ is bound to explain her reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [her] articulation.'" Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)). The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459). The ALJ is required only to review the entire record, resolve conflicts in the evidence and state specific reasons for her credibility findings, supported by the evidence. Luckey, 458 F. App'x at 324; Giles, 433 F. App'x at 249; Newton, 209 F.3d at 452.

The ALJ complied with these requirements in the instant case.  She explained why Williams's subjective symptoms and alleged limitations were not credible and were inconsistent with the clinical and objective findings.  These reasons included that plaintiff had routine, conservative treatment with largely normal findings on physical examinations, other than pain and very limited range of motion in his right shoulder; his complaint of seizures was supported only by his own reported medical history and was noted by his doctors to be atypical of seizures; objective medical findings were not consistent with the extreme degree of alleged limitation; and the opinions of Dr. Dijamco and Timothy Honigman, M.D., the physician who assessed plaintiff's residual functional capacity at the initial agency level (Tr. 84-86, 96-98), were consistent with the medical evidence as a whole and did not support the alleged limitations.

These reasons are substantially supported by the evidence.  Thibodeaux v. Astrue, 324 F. App'x 440, 443-44 (5th Cir. 2009); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)); Austin v. Apfel,  205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999) (citing Griego, 940 F.2d at 945).  Accordingly, this assignment of error lacks merit.

4.     The ALJ did not err in assigning significant weight to Dr. Honigman's opinion.

Williams argues that the ALJ erred by granting significant weight to the opinion of Dr. Honigman, a non-examining medical expert, who on June 26, 2012 assessed plaintiff's residual functional capacity for light work with essentially the same limitations that the ALJ adopted in her decision.  Williams contends that Dr. Honigman's opinion should have been afforded less weight because it did not refer to plaintiff's thoracic spine or right shoulder problems or to the sleep study and sleep apnea diagnosis from December 2011, which was not submitted to the Commissioner until June 2013.

"State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(f)(2)(i).  "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence." Alejandro v. Barnhart, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)); accord Butler v. Barnhart, 99 F. App'x  559, 560 (5th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i)).

It is well-established that the ALJ may rely on the non-examining medical expert's function-by-function analysis of the impact of claimant's impairments on his ability to perform various tasks.  Beck v. Barnhart, 205 F. App'x 207, 213-14 (5th Cir. 2006)

(citing <u>Onishea v. Barnhart</u>, 116 F. App'x 1, 2 (5th Cir. 2004); <u>Myers v. Apfel</u>, 238 F.3d 617, 620-21 (5th Cir. 2001); SSR 96-8p, 1996 WL 374184); <u>accord</u> <u>Weatherspoon v. Astrue</u>, No. 12-2998, 2013 WL 5507293, at *5 (E.D. La. Sept. 30, 2013) (citing <u>Onishea</u>, 116 F. App'x at 2).

Although Dr. Honigman's residual functional capacity analysis was completed on June 26, 2012, and the record contains medical evidence generated after that date, Williams has not identified any additional credible evidence that is inconsistent with Dr. Honigman's assessment. The ALJ considered all of the evidence, including the medical evidence dated after Dr. Honigman's opinion, and found that Dr. Honigman's opinion was supported by Dr. Dijamco's findings and was consistent with the record as a whole, which contained no other function-by-function analysis of plaintiff's impairments. The ALJ found that the evidence did not support limitations beyond what Dr. Honigman had assessed. (Tr. 26).

The ALJ gave no weight to a medical source statement dated February 5, 2013, from Morteza Shamsnia, M.D., at the Bogalusa Medical Center Neurology Clinic, where plaintiff was referred for evaluation of seizures. Dr. Shamsnia's only findings on physical examination were right-sided weakness and right facial drooping,[12] which mirrored the findings of neurologist Dr. Esse one year earlier (Tr. 361), and a new

---

[12]This handwritten word is not entirely clear, but Dr. Esse found right facial drooping in February 2012. The unclear word appears to be similar to "drooping."

symptom of nystagmus.[13]   Dr. Shamsnia diagnosed status post brain aneurysm, cardiovascular accident, complex partial seizure, sleep apnea and hypertension.  In the "Plan" portion of the notes, Dr. Shamsnia stated that the patient "is totally and permanently disabled."  (Tr. 577-78).  As the ALJ stated, Dr. Shamsnia's progress note contains no function-by-function analysis (nor any findings on physical examination or objective testing) to support his statement that Williams is disabled.  Dr. Shamsnia's statement is not a medical opinion and has no special significance in the ALJ's legal determination whether plaintiff is able to work.  Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003).

"[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Newton, 209 F.3d at 455 (quotation omitted).  As she is entitled to do, the ALJ resolved conflicts in the evidence in favor of the opinions of Drs. Honigman and Dijamco.  Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).  Accordingly, this assignment of error lacks merit.

---

[13]Nystagmus is "involuntary usually rapid movement of the eyeballs (as from side to side) occurring normally with dizziness during and after bodily rotation or abnormally following head injury or as a symptom of disease."  MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/nystagmus.

5.    The ALJ's hypothetical to the vocational expert fully incorporated
plaintiff's disabilities that the ALJ found credible.

The ALJ found at the fifth step of the sequential evaluation that jobs exist in significant numbers that plaintiff can perform.  Williams argues that the vocational expert's testimony in this regard is not substantial evidence upon which the ALJ could rely because the testimony did not fully incorporate his disabilities.

Once the ALJ determines plaintiff's residual functional capacity, she may rely on vocational expert testimony to reach conclusions about the specific requirements of a particular occupation.  Dominguez-Herrera v. Astrue, 334 F. App'x 651, 654 (5th Cir. 2009) (citing Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995)); Weary v. Astrue, 288 F. App'x 961, 967-68 (5th Cir. 2008); Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995); Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995).

The ALJ posed hypothetical questions to the vocational expert that accounted for plaintiff's age, education, work experience, and physical limitations, which the ALJ found to be credible.  The vocational expert testified that such a person could perform the jobs of usher, locker room attendant and counter clerk.  Plaintiff was represented by counsel at the hearing, and his counsel also questioned the vocational expert.  An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question

by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994); accord Vaught v. Astrue, 271 F. App'x 452, 456 (5th Cir. 2008); Boyd, 239 F.3d at 706-07.

In this case, plaintiff's counsel questioned the vocational expert and posed a hypothetical of a person who, because of the effects of a seizure disorder, pain and diminished alertness would be unable to come to work or, having come to work, would be unable to complete an eight-hour work day. Sapp testified that such an individual would not be able to sustain any employment. However, the ALJ found that the record did not support the restrictions posed by plaintiff's attorney.

As discussed above, substantial evidence supports the ALJ's finding that Williams does not suffer from such extreme limitations. Therefore, the ALJ was not required to include such restrictions in her hypothetical questions. Carey v. Apfel, 230 F.3d 131, 143 (5th Cir. 2000). The vocational expert's testimony in response to the ALJ's hypothetical questions is substantial evidence on which the ALJ could rely to determine that plaintiff can perform work with the restrictions noted in her opinion. Accordingly, this assignment of error lacks merit.

6.   There is no evidence that Williams did not receive fair and unbiased consideration of his claim.

Williams argues that he did not receive fair and unbiased consideration of his claim because the ALJ who convened his first hearing allegedly made some intemperate remarks and was argumentative with plaintiff's attorney.  However, the first ALJ offered Williams the option to have another ALJ decide his case.  Plaintiff accepted that offer and the matter was reassigned to another ALJ.  Williams has not identified any prejudice as a result of that first hearing.

Plaintiff contends that he did not receive "fair-minded consideration" from the second ALJ because she "exercised considerable haste in seeking to get the case out the door" by issuing her decision 13 days after the hearing.  His counsel states, without reference to any evidence, that 13 days is atypically fast for decisions from ALJs in this region.  Williams argues that the "carelessly drafted and proofed" decision contained some typographical and factual errors and that the ALJ failed to consider the evidence of his sleep apnea, which he submitted five days after the hearing.  Without citing anything specific in the hearing transcript or decision, plaintiff speculates that the second ALJ was "apparently offended by the fact that he exercised his right to file a new claim shortly after a former claim was denied."  Plaintiff's memorandum, Record Doc. No. 15 at p. 12.

No evidence supports plaintiff's allegation that the ALJ was biased or failed to consider all of the evidence that was submitted and incorporated into the record before she rendered her decision.  Aside from his disagreement with the ALJ's findings and conclusions, Williams points to nothing in her conduct of the hearing or her decision that evidences any unfairness.

> "'[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge' unless 'they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'"  Brown [v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999)], . . . (quoting Liteky v. United States, 510 U.S. 540, 555 . . . (1994)). . . . [N]one of the behaviors [plaintiff] points to rises to the level of impermissible bias.  Compare id. (finding no bias despite ALJ's statement that the treating physician "was attempting to help the claimant get benefits because of his relationship with her"); see also Liteky, 510 U.S. at 555-56 . . . (stating that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias).

Yates v. Colvin, 606 F. App'x 225, 229-30 (5th Cir. 2015); see id. (no evidence of bias when ALJ "laughed during the hearing, expressed his surprise that Yates has been receiving benefits since the 2003 hearing, and noted his disapproval of [prior] ALJ Herbert's reasoning"); cf. Ventura v. Shalala, 55 F.3d 900, 902-03 (3d Cir. 1995) (internal quotation and citation omitted) (The ALJ demonstrated "impatience and hostility towards claimant's lay representative" at the hearing.  "The ALJ's questioning of the claimant was coercive and intimidating, and totally irrelevant to the question of whether claimant was disabled.  Moreover, the ALJ appeared disinterested in claimant's

description of his pain in violation of the duty to give serious consideration to a claimant's subjective complaints of pain . . . ."); Kitt v. Comm'r of Soc. Sec., No. 14-CV-5632 JG, 2015 WL 4199281, at *3 (E.D.N.Y. July 13, 2015) (footnote omitted) ("[T]he ALJ confronted Kitt with 'gotcha' type questions that reeked of skepticism throughout the hearing.  An underlying tone of hostility and doubt replaced that of a neutral fact-finder . . . .  [T]he ALJ's hostility toward Kitt impaired his ability to properly develop the record, and, consequently, to properly evaluate Kitt's credibility.  Most importantly, it stripped the proceedings of fairness.").

The record establishes that no such highly antagonistic conduct occurred here.  Accordingly, this assignment of error lacks merit.

## CONCLUSION

Substantial evidence supports the ALJ's findings regarding the severity of plaintiff's impairments and his residual functional capacity.  The ALJ appropriately relied on the opinion of Dr. Honigman and the vocational expert's testimony.  There is no evidence that Williams did not receive fair and unbiased consideration of his claim.

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[14]

New Orleans, Louisiana, this __14th__ day of September, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

_____

[14]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.